UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

GREGORY HOLWERDA and CHERYL
FAYE HOLWERDA,

              Debtors.

_____/

Case No. DG 09-07725

Hon. Scott W. Dales

Chapter 7

**SUPPLEMENTAL OPINION REGARDING SALE-RELATED MOTION**

On the record at the court's April 29, 2010 Grand Rapids motion day, over the strenuous objection of City Realty Corporation ("City"), the court announced its intention to approve a sale of the bankruptcy estate's interest, if any, in thirteen limited-liability companies (the "LLC Interests") to Dan Holwerda, the brother and business partner of Chapter 7 Debtor, Gregory Holwerda ("Debtor"). City filed its objection (DN 79, the "Objection") because City wanted to purchase the LLC Interests from the Chapter 7 Trustee, John A. Porter (the "Trustee"). In fact, the court had previously approved such a sale pursuant to the parties' earlier sale agreement (the "City Sale Agreement"), but the sale did not close.

From the bench on April 29, 2010, the court also announced its intention to deny City's related motion to compel the Trustee to transfer the LLC Interests (DN 69, the "Motion to Compel"). Because time did not permit the court to offer a full explanation of its decision to overrule City's Objection and deny the Motion to Compel, the court has determined to issue this short supplemental opinion.

By order dated January 7, 2010, the court authorized Chapter 7 Trustee John Porter to sell the LLC Interests to City or its assignee pursuant to 11 U.S.C. § 363(b) and the City Sale

Agreement, attached to the Trustee's first motion to sell the LLC Interests (DN 44, the "First Sale Motion"). Under the City Sale Agreement, City was to pay the Trustee $50,000.00 for the LLC Interests, which the Trustee would then transfer, essentially through a "quit claim" transaction, at a closing that the parties agreed would occur "in no event later than January 25, 2010." As City prepared for the closing, it became concerned that the Debtor and his brother were transferring assets from the limited-liability companies in which City was about to purchase membership interests. City asked the Trustee to postpone the sale in order to investigate the supposed irregularities and persuade the Holwerdas to restore the *status quo ante* by returning the property and unwinding the transfers that troubled City. Even though the Trustee had agreed to sell only the LLC Interests -- and not the assets owned by any of the related limited-liability companies -- the Trustee agreed to an adjournment beyond January 25, 2010. The parties thereafter agreed to an additional adjournment, to February 19, 2010. When City requested yet another adjournment, this one to March 8, 2010, the Trustee declined to extend the deadline, and proceeded to obtain approval of an alternative transaction with Cathead Holdings, LLC ("Cathead"), an entity associated with Dan Holwerda.

This second proposed sale, described in the Trustee's second sale motion filed on March 10, 2010 (DN 66, the "Second Sale Motion"), called for the Trustee to transfer the LLC Interests to Cathead for $75,000.00 and to release the estate's Chapter 5 claims against Dan Holwerda, that involved a prepetition transfer of a boat titled in one of the limited-liability companies in which the estate may have held an interest. Although somewhat remote given the reported titling of the boat, the parties evidently believed that either Dan Holwerda or Cathead might have some exposure related to the prepetition boat transfer. The Trustee and Dan Holwerda put a price of $25,000.00 on that exposure. As a result, the sale to Mr. Holwerda

promised to liberate $25,000.00 more in value for the bankruptcy estate than the sale to City that the court had previously approved.  City filed its Objection and the Motion to Compel.  The Motion to Compel included a request for permission to sue the Trustee in state court under the *Barton* doctrine, a doctrine designed to give courts control over satellite litigation commenced in other courts for acts done by a receiver, trustee, or other fiduciary in their official capacities. *See, e.g., In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  City's Motion to Compel, and presumably the state court litigation it proposed, in effect requested specific performance of the City Sale Agreement.

The gist of City's Objection and its Motion to Compel is that the court should not permit the Trustee to sell the LLC Interests twice, especially after the court had approved the first transaction.  City's opposition to the sale is understandable, given its view that the Holwerdas interfered with the closing of the City Sale Agreement by transferring assets, changing assumed-name filings, and otherwise taking steps to diminish the value of the LLC Interests City intended to purchase.

At the April 29, 2010 hearing, the court overruled the Objection and announced its intention to deny the Motion to Compel for several reasons.  First, the court drew a distinction between ownership of the assets held by a limited-liability company, and ownership of the interests in the limited-liability company itself.  Here, the Trustee did not agree to sell the assets of the thirteen limited-liability companies, but rather membership interests in them.  City might have bargained for protection against the transfers of the limited-liability companies' property by, for example, conditioning its duty to close on receipt of an affidavit or other proof that the assets in each company had not been diminished pre-closing.  The parties, however, did not strike this bargain.  Indeed, given the nature of the Trustee's office and the fact that such assets

are not included within the bankruptcy estate, it would be difficult for him to police such a provision. Instead, the parties bargained for a transaction in the nature of a quit claim deed to the LLC Interests: to quote Trustee's counsel at the hearing, "as is, where is, if is."

The second reason for overruling the Objection and denying the Motion to Compel is that the second sale promises a better return for the estate's creditors because Dan Holwerda agreed to pay an additional $25,000.00 to settle the Trustee's Chapter 5 claims related to the boat. The Trustee's counsel alluded to the difficulties in bringing an avoidance action, given corporate structures and the titling of the boat. Although these difficulties were certainly impediments to ultimate recovery of the boat or its value, they did not foreclose it. The parties and the court recognized this fact, and the efficacy of avoiding costly litigation.

Third, the court acknowledged that City had standing to complain, as the court-approved buyer in the first transaction, not merely a disappointed bidder. *Cf. Squire v. Scher (In re Squire)*, 282 Fed. Appx. 413, 416 (6th Cir. 2008). However, as the court explained at the hearing, its approval of the Second Sale Motion did not affect City's right to require the estate to answer in damages, under a contract or tort theory, upon proper proofs. Such a claim for relief might take the form of an adversary proceeding or perhaps an administrative claim (the court does not now decide the precise procedure for requesting such relief), but the forum for any litigation against the Trustee as the representative of the estate will be the United States Bankruptcy Court.[1]

---

[1]City stated that the Trustee took the challenged actions in his official capacity rather than personal capacity, and conceded that the court has discretion under the *Barton* doctrine to authorize, or decline to authorize, suit in another court. The court will exercise its discretion in a way that keeps the dispute in federal court, because the bankruptcy forum promises an expeditious resolution and the best opportunity for balancing all interests in this collective proceeding.

City also had an opportunity to mitigate its damages, if any, by bidding for the LLC Interests during the courtroom auction portion of the hearing. Admittedly, the approval of the Second Sale Motion doomed City's request for specific performance. But after balancing the creditors' interest in prompt liquidation and payment against the loss of City's possible equitable remedy, the scales tipped in favor of the estate and its creditors, prompting the court to overrule the Objection and deny the Motion to Compel.[2] Moreover, if Cathead or Dan Holwerda improperly interfered with the City Sale Agreement, the court's approval of the Second Sale Motion does not diminish any tort claim City might assert in state court for tortious interference with the contract or, perhaps, business expectancy.[3]

Finally, although City reads the court's first sale order as somehow requiring the Trustee to consummate the sale, the court does not share this view. Rather, under the terms of the order itself and the applicable statute, the court simply authorized the Trustee to proceed but did not require him to do so. *See* Order Approving Motion for Entry of an Order Authorizing the Sale of Assets Pursuant to 11 U.S.C. § 363(b), at 2 (Trustee is "authorized and approved" to transfer the LLC Interests) (DN 58); 11 U.S.C. § 363(b)(1) ("The trustee, after notice and hearing, may use, sell, or lease . . . ").

For the foregoing reasons, in addition to those given from the bench on April 29, 2010, the court will enter separate orders approving the Second Sale Motion over City's Objection and denying City's Motion to Compel.

---

[2]As the court noted at the April 29, 2010 hearing, City's request for relief in the Motion to Compel effectively sought equitable relief in the form of specific performance and recovery of the LLC Interests by motion rather than adversary proceeding, and was therefore procedurally deficient. *See* Fed. R. Bankr. P. 7001(1) (proceeding to recover property) & (7) (proceeding to obtain injunction or other equitable relief); *cf. United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010).

[3] The court reiterates that nothing in this opinion should be construed to authorize City to sue the Trustee in a forum other than this court. Similarly, nothing in this opinion is intended to resolve any such claim, any claim against Cathead or Dan Holwerda, or for that matter, to expand or contract the jurisdiction of this court or others.

**IT IS SO ORDERED.**    Scott W. Dales
United States Bankruptcy Judge

**Dated: May 04, 2010**